UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FBA OF SYOSSET, LLC

               Plaintiff,

      - against -

GRANT BENEFITS SOLUTIONS, LLC, d/b/a FLEX
FACTS and FLEX FACTS, INC., SHLOMO SCHON,
d/b/a FLEX FACTS and FLEX FACTS, INC., and
THE HAMPTON CONSULTING CORP.,

               Defendants.
-------------------------------------------------------------------X

**16-CV-02165 (DRH)(SIL)**

**VERIFIED
AMENDED
COMPLAINT**

       Plaintiff, FBA of Syosset, LLC, by and through its attorneys, **LEVITT LLP**, as and for

its Verified Amended Complaint, herein alleges as follows:

<u>**PARTIES**</u>

       1.     At all times hereinafter mentioned, Plaintiff FBA of Syosset, LLC (hereinafter

referred to as "Plaintiff" or "FBA") was, and still is, a limited liability company authorized and

existing under and by virtue of the laws of the State of New York, conducting business in New

York with its principal place of business at 100 Quentin Roosevelt Blvd., Suite 502, Garden City,

New York 11530, in the County of Nassau, State of New York.

       2.     Plaintiff is a provider of services with respect to flexible spending plans to home

care workers in the healthcare industry.

       3.     Upon information and belief, and at all times hereinafter mentioned, Defendant

Grant Benefits Solutions, LLC d/b/a Flex Facts and Flex Facts, Inc. (hereinafter sometimes

referred to as "GBS") was, and still is, a foreign limited liability company organized and existing

under and by virtue of the laws of the State of New Jersey, conducting business in New York, with

its principal place of business located at 7 Grant Avenue, Lakewood, New Jersey 08701, in the County of Ocean, State of New Jersey.

4.    Upon information and belief, GBS does business under at least two (2) different assumed names:

a.    Flex Facts; and/or

b.    Flex Facts, Inc.

5.    Upon information and belief, and at all times hereinafter mentioned, Defendant Shlomo Schon was, and is, the President of GBS.

6.    Upon information and belief, and at all times hereinafter mentioned, Kevin Boyle was, and is, the Chief Operating Officer of GBS.

7.    GBS provided benefits cards to Plaintiff, which Plaintiff in turn provided to its clients as part of Plaintiff's flexible spending plan services.

8.    Upon information and belief, and at all times hereinafter mentioned, Defendant Shlomo Schon d/b/a Flex Facts and Flex Facts, Inc. (hereinafter sometimes referred to as "Schon") was, and is, an individual residing in the State of New Jersey.

9.    Upon information and belief, Schon does business under at least two (2) different assumed names:

a.    Flex Facts; and/or

b.    Flex Facts, Inc.

10.   Schon provided benefits cards to Plaintiff, which Plaintiff in turn provided to its clients as part of Plaintiff's flexible spending plan services.

11.   Upon information and belief, and at all times hereinafter mentioned, Defendant The Hampton Consulting Corp. (hereinafter sometimes referred to as "THCC") was, and still is, a

foreign limited liability company organized and existing under and by virtue of the laws of the State of Pennsylvania, conducting business in New York, with its principal place of business located at 26 Jericho Run, Washington Crossing, Pennsylvania 18977, in the County of Bucks, State of Pennsylvania.

12.     Upon information and belief, THCC is a broker to GBS and/or Schon.

13.     Upon information and belief, and at all times hereinafter mentioned, Philip Donegan was, and is, the President of THCC.

14.     GBS and Schon are hereinafter sometimes collectively referred to as "Flex Facts."

15.     GBS, Schon and THCC are hereinafter sometimes collectively referred to as "Defendants."

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendants and because the amount in controversy exceeds  Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

17.     This Court also has subject matter jurisdiction because Plaintiff's Verified Amended Complaint includes a cause of action for violation of the Lanham Act under 15 U.S.C. § 1125, and a cause of action for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, 1839 ("DTSA") and, as such, constitutes a federal question under 28 U.S.C. § 1331.

18.     The Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a) because Defendants transacted business within the State of New York or contracted business anywhere to supply goods or services within the State of New York.

19.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.    PLAINTIFF'S SERVICES**

20.     Generally, the Internal Revenue Code allows certain expenses to be deducted on a pre-tax basis depending on certain qualifications of employees in certain industries.   Those expenses can be deducted by using a flexible spending plan.

21.     Since 2013, Plaintiff has provided services with respect to flexible spending plans to home care workers in the healthcare industry.

22.     At all times relevant to this case, Plaintiff would provide its services by entering into a contract with an employer in the healthcare industry to implement a flexible spending plan for the employer's home care workers.  The contract between Plaintiff and an employer is typically for the term of one (1) year with automatic renewals year to year thereafter.

23.     As part of its services to its clients, Plaintiff:

a.      determines which pre-tax benefits its clients' home care workers would most likely take advantage of;

b.      provides consulting advice regarding the availability of pre-tax benefits to its clients' home care workers to maximize these workers' potential benefits;

c.      assists its clients in selecting which benefits to include in the flexible spending plans;

d.      maintains records of clients' flexible spending plans;

e.      controls and keeps track of each home care worker's trust account which funds the flexible spending plan;

f.      provides English and foreign language customer service for any questions or concerns that the home care workers have about their flexible spending plans;

g.      gives presentations to explain its services to the home care workers;

h.      provides the home care workers with benefits cards, which are used to pay for items covered under their flexible spending plans; and

i.      processes claims covered under the flexible spending plans when the home care workers incurred an expense without using the benefits cards.

24.     Plaintiff charges a monthly service fee to the home care workers for its flexible spending plans.

25.     The manner in which Plaintiff analyzes available benefits, custom tailors those benefits, and maximizes those benefits for the home care worker industry is a unique business model.

26.     Plaintiff is the owner of trade secrets, as defined by the DTSA.

27.     Plaintiff's trade secrets include, but are not limited to, its methods of doing business, business models, technology, know-how, price books or lists, and client names.

28.     Plaintiff has taken reasonable measures to keep its trade secrets confidential, including, but not limited to, storing Plaintiff's trade secrets on password protected computers and allowing only certain employees to access those computers.

**B.      PLAINTIFF'S RELATIONSHIP WITH FLEX FACTS**

29.     In or about 2012, Plaintiff began working with Flex Facts.

30.     Since in or about 2012, up to in or about May 2016, Flex Facts has loaded the flexible spending category codes onto the benefits cards for Plaintiff, and then Plaintiff provided those benefits cards as part of its flexible spending plan services to New York State Home Health Care agencies, and Wage Parity and Living Wage programs throughout the State of New York.

31.     On or about March 7, 2014 Plaintiff and Flex Facts entered into an Agreement (the "Agreement").

32.     The Agreement states that it is entered into between "FBA of Syosset" and "Flex Facts Inc."

33.     Schon signed the Agreement on behalf of "Flex Facts."

34.     Under the Agreement, Flex Facts agreed that it would not "use [Plaintiff's] client names…."

35.     Under the Agreement, Flex Facts agreed that "All information transferred or otherwise revealed to Flex Facts by [Plaintiff] under this Agreement, including but not limited to … technology, know-how and price books or lists, client names will at all times remain [Plaintiff's] property.  Flex Facts shall at all times hold such information confidential and shall not disclose any such information if not otherwise within the public domain."

36.     Flex Facts agreed to provide benefits cards for Plaintiff's flexible spending plans.

37.     Flex Facts agreed that Plaintiff would be the exclusive distributor of Flex Facts' benefits cards for New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York.

38.     Flex Facts agreed that it would not sell its benefits cards to any other company that provided flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York.

39.     Flex Facts agreed that it would not compete with Plaintiff in providing flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York.

40.     As a result of the relationship between Flex Facts and Plaintiff, Flex Facts was privy to Plaintiff's methods of doing business, business models, know-how, and client names.

41.     Flex Facts was privy to Plaintiff's know-how relating to, but not limited to, Plaintiff's (a) cell phone plans, (b) method of charging a monthly service fee to home care workers, (c) foreign language customer services, and (d) wage parity trust accounts.

## C.    PLAINTIFF'S LOSS OF POTENTIAL CLIENTS AND CONTRACTS

42.     In or around 2015, Plaintiff solicited an employer named ABI Health Care Agency ("ABI") to become a client of Plaintiff.

43.     Plaintiff met with ABI many times over the course of 2015 to formulate a flexible spending plan, which Plaintiff offered to service for ABI.

44.     One of the services that Plaintiff marketed to ABI was Plaintiff's foreign language customer service.

45.     ABI was about to enter into a contract with Plaintiff for Plaintiff's services, which services were scheduled to begin in or about January, 2016.

46.     ABI suddenly withdrew from its discussions with Plaintiff for Plaintiff's services, informing Plaintiff that ABI would be using another company.

47.     Upon information and belief, in or around late 2015 to early 2016, ABI entered into a contract with some or all of Defendants instead of Plaintiff.

48.     Also, throughout this time period, Plaintiff solicited an employer named Renaissance Home Health Care ("Renaissance") much the same way that Plaintiff had solicited ABI.

49.     Renaissance was about to enter into a contract with Plaintiff for Plaintiff's services.

50.     Renaissance suddenly withdrew from its discussions with Plaintiff for Plaintiff's services, informing Plaintiff that Renaissance would be using another company.

51.     Upon information and belief, by in or about 2016, Renaissance entered into a contract with some or all of Defendants instead of Plaintiff.

52.     Upon information and belief, Defendants have also solicited other home care workers' employers, thereby competing with Plaintiff.

**D.     DEFENDANTS' ACTS**

53.     Upon information and belief, THCC knew that Flex Facts and Plaintiff had an Agreement.

54.     Upon information and belief, THCC knew that Flex Facts had agreed that Plaintiff would be the exclusive distributor of Flex Facts for New York State Home Health Care agencies and to also include Wage Parity and Living Wage programs throughout the State of New York.

55.     Upon information and belief, THCC knew that Flex Facts had agreed that Flex Facts would not sell its benefits cards, throughout the State of New York, to any company other than Plaintiff.

56.     Upon information and belief, THCC knew that Flex Facts agreed that it would not compete with Plaintiff.

57.     Regardless, ABI and Renaissance were solicited by THCC's Philip Donegan on behalf of some or all of Defendants to provide flexible spending plan services similar to those offered by Plaintiff.

58.     Upon information and belief, ABI and Renaissance have entered into contracts with Flex Facts for flexible spending plan services similar to those offered by Plaintiff.

59.     Upon information and belief, ABI and Renaissance received benefits cards from Flex Facts similar to those offered by Plaintiff.

60.     Upon information and belief, THCC received a commission and other benefits from Flex Facts for obtaining ABI and Renaissance as clients.

61.     Upon information and belief, Flex Facts used Plaintiff's methods of doing business, business models, technology, know-how, price books or lists, and client names to provide services to ABI and Renaissance including, but not be limited to, Plaintiff's cell phone plans, Plaintiff's methods of charging a monthly service fee to the home care workers, Plaintiff's foreign language customer service, and Plaintiff's method of controlling and keeping track of trust accounts to fund the flexible spending plans for home care workers.

62.      Upon information and belief, Flex Facts has adopted and used Plaintiff's methods of doing business, business models, know-how, and client names.

63.     Flex Facts has adopted and used Plaintiff's methods of doing business, business models, technology, know-how, price books or lists, and client names without Plaintiff's consent.

64.     Flex Facts acquired Plaintiff's trade secrets while bound by, *inter alia*, the terms of the Agreement with Plaintiff not to disclose such trade secrets.

65.     Flex Facts provides flexible spending plan services to ABI and Renaissance similar to the flexible spending plan services offered by Plaintiff.

66.     Flex Facts provides benefits cards to ABI and Renaissance similar to the benefits cards offered by Plaintiff.

67.     By Flex Facts' providing benefit cards that are physically similar to those that had been provided by Plaintiff, ABI's and Renaissance's home care workers are confused and think that they have received Plaintiff's benefits cards and services, when ABI and Renaissance are actually doing business with some or all of Defendants.

68.     In and around the early part of 2016, Plaintiff began receiving phone calls from home care workers who sought customer service with respect to services from Defendants.

69.     In and around the early part of 2016, home care workers from ABI and Renaissance called Plaintiff's foreign language customer service representatives seeking assistance with respect to Defendants' services.

70.     As of in or about March 2016, when a home care worker calls Flex Facts' customer service number asking for a Chinese speaking representative, Flex Facts transfers that home care worker's call to Plaintiff's customer service center.

71.     Flex Facts' intentional transfer of calls to Plaintiff's foreign language customer service center is a misappropriation of Plaintiff's infrastructure and support system.

72.     Upon information and belief, Defendants have added purported benefits to the flexible spending plan for home care workers of ABI, and other companies not yet discovered, to cover expenses which are actually ineligible to be paid on a pre-tax basis.

73.     Defendants' inclusion of these added ineligible categories is a misrepresentation to ABI, and other companies not yet discovered, and its home care workers that such categories could be deducted on a pre-tax basis when actually they cannot.

74.     Defendants' misrepresentations induced ABI, and other companies of home care workers not yet discovered, to contract with Defendants for their services by promising pre-tax deductions that are in violation of the Internal Revenue Code.

75.     Defendants' misrepresentations were made to entice ABI, and other companies not yet discovered, to accept Defendants' services over Plaintiff's.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST THE FLEX FACTS DEFENDANTS
## (Breach of Contract)

76.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "75" above as though fully set forth at length herein.

77.     Plaintiff and Flex Facts entered into the Agreement.

78.     Plaintiff fulfilled all of its obligations under the Agreement with Flex Facts.

79.     Flex Facts agreed that is "shall not use [Plaintiff's] client names."

80.     Flex Facts agreed that "All information transferred or otherwise revealed to Flex Facts by [Plaintiff] under this Agreement, including but not limited to… technology, know-how and price books or lists, client names will, at all times, remain [Plaintiff's] property.  Flex Facts shall at all times hold such information confidential and shall not disclose any such information if not otherwise within the public domain."

81.     Flex Facts breached, and continues to breach, the Agreement by using Plaintiff's client names.

82.     Flex Facts breached, and continues to breach, the Agreement by failing to hold Plaintiff's information confidential.

83.     The aforementioned acts, as well as other acts to be discovered, constitute breach of the Agreement.

84.     As a result of the foregoing, Plaintiff has been damaged, continues to be damaged and demands judgment in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST THE FLEX FACTS DEFENDANTS**
**(Breach of Contract – Constructive Trust)**

85.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "84" above as though fully set forth at length herein.

86.     Flex Facts wrongfully obtained advantages from its breach of the Agreement.

87.     Plaintiff may not have an adequate remedy at law.

88.     As a result of the foregoing, Plaintiff has been damaged, and continues to be damaged, and demands the imposition of a constructive trust over all the property of Flex Facts, including but not limited to:

a.     any and all profits received from any transaction between Flex Facts on the one hand and either ABI, Renaissance or other companies Plaintiff has yet to discover on the other hand; and

b.     any and all profits received as a result of the use by Flex Facts of any of Plaintiff's methods of doing business, business models, technology, know-how and price books or lists, client names, including, but not limited to, any transactions between Flex Facts on the one hand and either ABI, Renaissance or other companies Plaintiff has yet to discover on the other hand.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST THE FLEX FACTS DEFENDANTS
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

89.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "88" above as though fully set forth at length herein.

90.     Plaintiff and Flex Facts entered into the Agreement.

91.     Flex Facts agreed that Plaintiff would be the exclusive distributor of its benefits cards for New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York.

92.     An implied term of the Agreement is that Flex Facts would not sell its benefits cards to any other company that provided flexible spending plans to New York State Home Health Care agencies and Wage Parity and Living programs throughout the State of New York, in violation of Flex Facts' agreement that Plaintiff would be the exclusive distributor

93.     An implied term of the Agreement is that Flex Facts would not compete with Plaintiff in providing flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York, in violation of Flex Facts' agreement that Plaintiff would be the exclusive distributor

94.     By Flex Facts' selling its benefits cards to other companies that provide flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York, Flex Facts breached, and continues to breach, the implied covenant of good faith and fair dealing.

95.     By Flex Facts' competing with Plaintiff in providing flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout

the State of New York, Flex Facts breached, and continues to breach, the implied covenant of good faith and fair dealing.

96.     The aforementioned acts of Flex Facts are arbitrary and/or unreasonable.

97.     The aforementioned acts of Flex Facts have the effect of preventing Plaintiff from obtaining clients in the healthcare industry.

98.     The aforementioned acts of Flex Facts had the effect of preventing Plaintiff from receiving the benefits under Plaintiff's Agreement with Flex Facts.

99.     The aforementioned acts, as well as other acts yet to be discovered, constitute a breach of the implied covenant of good faith and fair dealing in connection with the Agreement.

100.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged and demands judgment in an amount unknown at this time but believed to be in excess of Five-Million Dollars ($5,000,000.00).

101.    Furthermore, as Flex Facts' aforementioned acts evidence such a high degree of moral culpability as to be the equivalent of a criminal indifference to civil obligations, and are not merely an isolated incident, Plaintiff demands punitive damages equal to one-hundred twenty-five percent (125%) of the profits that Flex Facts makes selling its products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Flex Facts' bad acts to the trial of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST THE FLEX FACTS DEFENDANTS
### (Breach of Fiduciary Duty)

102.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "101" above as though fully set forth at length herein.

103.    By the Agreement and their relationship with each other, Flex Facts was privy to information but not limited to, Plaintiff's methods of doing business, business models, know-how, and client names.

104.    By the Agreement and their relationship with each other, Flex Facts was privy to Plaintiff's know-how relating to, but not limited to, Plaintiff's (a) cell phone plans, (b) method of charging a monthly service fee to home care workers, (c) foreign language customer services, and (d) wage parity trust accounts.

105.    As a result, Flex Facts had a duty to keep Plaintiff's methods of doing business, business models, know-how, and client names confidential.

106.    As a result, Flex Facts owed to Plaintiff a duty of fidelity, and Flex Facts was bound to perform its duties, and to serve in good faith, with that degree of care that an ordinarily prudent person or entity in a like position would use under similar circumstances.  Such duties included, but were not limited to, refraining from engaging in acts of self-dealing, and refraining from diverting opportunities which were in fact the legitimate property of Plaintiff.

107.    A fiduciary relationship existed between Plaintiff and Flex Facts.

108.    There was misconduct by Flex Facts when they sold their benefits cards to other companies that provided flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York.

109.    There was misconduct by Flex Facts when they competed with Plaintiff in providing flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York.

110.    There was misconduct by Flex Facts when they improperly used Plaintiff's technology, know-how and price books or lists, and client names in an attempt to further Flex Facts' economic benefit with respect to clients in the healthcare industry.

111.    There was misconduct by Flex Facts when they used Plaintiff's confidential information.

112.    As a result of such misconduct, as well as other acts yet to be uncovered, Flex Facts caused damages, and continues to cause damage, to Plaintiff.

113.    The damages to Plaintiff were directly caused by Flex Facts' misconduct.

114.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged, and demands judgment in an amount unknown at this time but believed to be in excess of Five-Million Dollars ($5,000,000.00).

115.    Furthermore, as Flex Facts' aforementioned acts evidence such a high degree of moral culpability as to be the equivalent of a criminal indifference to civil obligations, and are not merely an isolated incident, Plaintiff demands punitive damages equal to one hundred twenty-five percent (125%) of the profits that Flex Facts makes selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Flex Facts' bad acts to the trial of this action.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**<u>(Unfair Business Practices)</u>**

116.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "115" above as though fully set forth at length herein.

117.    Upon information and belief, Defendants engaged in unfair business practices against Plaintiff by using Plaintiff's information to solicit Plaintiff's potential clients in the healthcare industry by various means.

118.    Defendants engaged in unfair business practices against Plaintiff by using Plaintiff's foreign language customer service representatives as Defendants' own foreign language service representatives, when Plaintiff did not agree to, and was not paid for, providing those services.

119.    Upon information and belief, Defendants engaged in unfair business practices against Plaintiff by including ineligible categories in Defendants'' flexible spending plan and then misrepresenting to ABI that those categories could be deducted on a pre-tax basis, when actually they cannot.

120.    Upon information and belief, Defendants engaged in unfair business practices against Plaintiff by procuring Plaintiff's potential clients, ABI and Renaissance, so that ABI and Renaissance would not deal with Plaintiff.

121.    The acts set forth above were conducted by unlawful means, including fraud, intimidation and/or were engaged in without justifiable cause.

122.    The acts set forth above caused injury to Plaintiff.

123.    The acts set forth above, as well as other acts yet to be discovered, constitute unfair business practices.

124.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged, and demands judgment in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

125.    Furthermore, as Defendants' aforementioned acts evidence such a high degree of moral culpability as to be the equivalent of a criminal indifference to civil obligations, and are not merely an isolated incident, Plaintiff demands punitive damages equal to one hundred twenty-five percent (125%) of the profit Defendants make from selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Defendants' bad acts to the trial of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST THE FLEX FACTS DEFENDANTS
### (Unfair Competition)

126.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "125" above, as if same were more fully set forth at length herein.

127.    Plaintiff possesses certain assets and skills that consist of, among other things, technology, know-how and price books or lists, client names, confidential information, pricing information, and methods of doing business.

128.    Plaintiff expended funds and labor, and incurred costs in connection with its technology, know-how and price books or lists, client names, confidential information, pricing information, and methods of doing business.

129.    Plaintiff expended funds and labor, and incurred costs in connection with the Agreement.

130.    Flex Facts misappropriated the aforementioned skills, expenditures, and labor of Plaintiff.

131.    Flex Facts' acts were undertaken to exploit Plaintiff's skills, expenditures and labor, and to further Flex Facts' own commercial and personal advantage at the expense of Plaintiff.

132.    Flex Facts' acts were performed in bad faith.

133.    The aforementioned acts, as well as other acts yet to be discovered, constitute unfair competition.

134.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged and demands judgment in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

135.    Furthermore, as Flex Facts' aforementioned actions evidence such a high degree of moral culpability as to be the equivalent of a criminal indifference to civil obligations, and are not merely an isolated incident, Plaintiff demands punitive damages equal to one hundred twenty-five percent (125%) of the profit Flex Facts makes selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Flex Facts' bad acts to the trial of this action.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANT THCC**
**(<u>Tortious Interference with a Contract</u>)**

136.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "135" above, as if same were more fully set forth at length herein.

137.    THCC knew that Flex Facts and Plaintiff had an Agreement.

138.    THCC knew that Flex Facts had agreed that Plaintiff would be the exclusive distributor for Flex Facts for New York State Home Health Care agencies, and Wage Parity and Living Wage programs throughout the State of New York.

139.    THCC knew that Flex Facts had agreed that it would not sell its benefits cards to any company other than Plaintiff.

140.    THCC knew that Flex Facts had agreed that it would not compete with Plaintiff.

141.    THCC tortiously interfered with the Agreement by the aforementioned acts set forth herein, including, but not limited to, causing Flex Facts to breach the Agreement with Plaintiff.

142.    THCC used wrongful means to interfere with the Agreement, including intentional misrepresentations, fraudulent behavior, economic pressure, violation of a duty of fidelity, and/or the commission of the multiple torts as set forth herein, among other things yet to be discovered.

143.    The aforementioned acts, as well as other acts yet to be discovered, caused injury, and continues to cause injury, to Plaintiff.

144.    The aforementioned acts, as well as other acts yet to be discovered, constitute tortious interference with a contract.

145.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged and demands judgment in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

146.    Furthermore, as THCC's aforementioned acts evidence such a high degree of moral culpability as to be the equivalent of a criminal indifference to civil obligations, and are not merely an isolated incident, Plaintiff demands punitive damages equal to one hundred twenty-five percent (125%) of the profits that THCC makes selling its products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of THCC's bad acts to the trial of this action.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Tortious Interference With Prospective Contractual Relations)

147.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "146" above, as if same were more fully set forth at length herein.

148.    Defendants knew that Plaintiff had an expectation of prospective contractual relations with ABI and Renaissance.

149.    Defendants tortiously interfered with those prospective contractual relations by the aforementioned acts set forth herein, including, but not limited to, soliciting and obtaining business from those companies.

150.    Defendants used wrongful means to interfere with Plaintiff's prospective contractual relations, including intentional misrepresentations, fraudulent behavior, economic pressure, violation of a duty of fidelity, and/or the commission of the multiple torts as set forth herein, among other things yet to be discovered.

151.    Defendant's wrongful means that were used to interfere with Plaintiff's prospective contractual relations, include but, are not limited to:

a.  Providing benefits cards to ABI and Renaissance, similar to those offered by Plaintiff;

b.  Providing flexible spending plan services to ABI and Renaissance, similar to those offered by Plaintiff;

c.  Using Plaintiff's methods of doing business, business models, know-how, and client names to provide services to ABI and Renaissance;

d.  Transferring calls from Flex Facts' customer service to Plaintiff's customer service center in order to misappropriate Plaintiff's infrastructure and support system;

e.  Misrepresenting to ABI, and other companies not yet discovered, that certain ineligible categories of expenses could be included in Defendants' flexible spending plan and deducted on a pre-tax basis, when they actually cannot; and

f.  Other acts yet to be discovered.

152.    The aforementioned acts, as well as other acts yet to be discovered, caused injury, and continue to cause injury, to Plaintiff.

153.    The aforementioned acts, as well as other acts yet to be discovered, constitute tortious interference with prospective contractual relations.

154.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged, and demands judgment in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

155.    Furthermore, as Defendants' aforementioned acts evidence such a high degree of moral culpability as to be the equivalent of a criminal indifference to civil obligations, and are not merely an isolated incident, Plaintiff demands punitive damages equal to one hundred twenty-five percent (125%) of the profits that Defendants make selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Defendants' bad acts to the trial of this action.

**AS AND FOR A NINTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**(Conspiracy to Commit Unfair Business Practices, Unfair Competition,**
**Tortious Interference with Prospective Contractual Relations,**
**Violations under the Lanham Act, 15 U.S.C. §1125 and Violations of the Defend Trade**
**Secrets Act 18 U.S.C. §§ 1836, 1839)**

156.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "155" above, as if same were more fully set forth at length herein.

157.    Defendants agreed to participate in the unlawful acts, including but not limited to those acts referenced herein which constitute unfair business practices, unfair competition and tortious interference with prospective contractual relations, Lanham Act violations, violations of the Defend Trade Secrets Act, breach of fiduciary duty and/or breach of the implied covenant of good faith and fair dealing.

158.   Defendants' unlawful overt acts include, but are not limited to, the following:

a.   Flex Facts sold their benefits cards to companies other than Plaintiff that provided flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the state of New York.

b.   Flex Facts competed with Plaintiff in providing flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the state of New York.

c.   Flex Facts improperly used Plaintiff's methods of doing business, business models, technology, know-how and price books or lists, and client names in an attempt to further Flex Facts' its economic benefit with respect to clientele in the healthcare industry.

d.   Defendants used Plaintiff's information to solicit Plaintiff's potential customers in the healthcare industry by various means.

e.   Defendants used Plaintiff's foreign language customer service representatives as Defendants' own foreign languages services representatives when Plaintiff did not agree to, and was not paid for, providing those services.

f.   Upon information and belief, Defendants included ineligible categories in their flexible spending plan and then misrepresented to ABI that those categories could be deducted on a pre-tax basis, when actually they cannot.

g.   Upon information and belief, Defendants procured Plaintiff's potential customers, ABI and Renaissance, by telling them not to deal with Plaintiff.

h.  Flex Facts provides flexible spending plan services to ABI and Renaissance similar to the flexible spending plan services offered by Plaintiff.

i.  Flex Facts provides benefits cards to ABI and Renaissance similar to the benefits cards offered by Plaintiff.

159.  Plaintiff was injured by an unlawful overt act performed by GBS, Schon and/or THCC.

160.  Defendants' overt acts were pursuant to and in furtherance of a common scheme.

161.  Defendants' overt acts were in furtherance of the common scheme to obtain business and divert business away from Plaintiff for Defendants' benefit.

162.  As a result of the foregoing, Plaintiff has been damaged, continues to be damaged and demands judgment in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

163.  Furthermore, as Defendants' aforementioned acts evidence such a high degree of moral culpability as to be the equivalent of a criminal indifference to civil obligations, and are not merely an isolated incident, Plaintiff demands punitive damages equal to one hundred twenty-five percent (125%) of the profits that Defendants make selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Defendants' bad acts to the trial of this action.

**AS AND FOR A TENTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
(<u>Violations Under the Lanham Act, 15 U.S.C. § 1125</u>)**

164.  Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "163" above, as if same were more fully set forth at length herein.

165.    Flex Facts provides flexible spending plan services to ABI and Renaissance, similar to the flexible spending plan services offered by Plaintiff.

166.    Flex Facts' providing of Plaintiff's flexible spending plan services causes ABI's and Renaissance's home care workers to be confused and think that they have received Plaintiff's services, when ABI and Renaissance are actually doing business with Defendants.

167.    Flex Facts' providing of Plaintiff's flexible spending plan services causes confusion in the marketplace.

168.    Flex Facts provides benefits cards to ABI and Renaissance physically similar in size, shape and color to the benefits cards offered by Plaintiff.

169.    Flex Facts' providing of benefits cards physically similar in size, shape and color to the benefits cards offered by Plaintiff causes ABI's and Renaissance's home care workers to be confused and think that they have received Plaintiff's services, when ABI and Renaissance are actually doing business with Defendants.

170.    Flex Facts' providing of benefits cards physically similar in size, shape and color to the benefits cards offered by Plaintiff causes confusion in the marketplace.

171.    When a home care worker calls Flex Facts' customer service asking for a Chinese speaking representative, Flex Facts transfers that home care worker's call to Plaintiff's customer service center.

172.    Flex Facts' transfer of that home care worker's call to Plaintiff's foreign language customer service center causes ABI's and Renaissance's home care workers to be confused and think that they have received Plaintiff's services, when ABI and Renaissance are actually doing business with Defendants.

173.    Flex Facts' transfer of that home care worker's call to Plaintiff's foreign language customer service center causes confusion in the marketplace.

174.    Defendants have made, and continue to make, false or misleading statements, leading their clients to believe that they are doing business with Plaintiff.

175.    Defendants' false or misleading statements do, or are likely to, cause confusion to their clients and home care workers.

176.    Defendants have made false or misleading statements in connection with commercial advertising or promotion.

177.    Defendants' false or misleading statements are material.

178.    Defendants' false or misleading statements were made in interstate commerce.

179.    Defendants have injured Plaintiff's commercial interests in its reputation and/or sales.

180.     Defendants' aforementioned acts and misrepresentations, as well as others yet to be discovered, proximately caused injury to Plaintiff.

181.    The aforementioned acts and misrepresentations, as well as others yet to be discovered, constitute a violation of the Lanham Act, 15 U.S.C. § 1125.

182.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged and demands judgment in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

183.    As a result of the foregoing, Plaintiff has no adequate remedy at law.

184.    As a result of the foregoing, Plaintiff is entitled to injunctive relief, as well as monetary damages as provided by the Lanham Act and New York State common law.

185.   As a result of the foregoing, Plaintiff is entitled to treble damages, attorney's fees and full costs.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Unjust Enrichment)

186.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "185" above, as if same were more fully set forth at length herein.

187.   Throughout the course of its business, Plaintiff expended substantial time, money and effort to build and promote its business in the healthcare industry in New York.

188.   As a result of Plaintiff's efforts, Defendants were and are in a position to exploit the efforts of Plaintiff and to realize substantial profits and/or benefits from the efforts of Plaintiff.

189.   As a result of Plaintiff's efforts, Defendants have gained substantial benefit and have been, and continue to be, unjustly enriched.

190.   As a result of the foregoing, Defendants have had the benefit of Plaintiff's efforts and have not compensated Plaintiff for the value of same.

191.   Defendants, in equity and good conscience, should not be permitted to retain the substantial benefits they have received as a result of Plaintiff's efforts.

192.   Plaintiff sustained damages and demands judgment against Defendants in an amount to be determined at trial but believed to be, in no event, an amount less than Five Million Dollars ($5,000,000.00).

193.   Defendants have been unjustly enriched by the improper taking of the value of Plaintiff's efforts that were made on Plaintiff's own behalf, and Plaintiff demands judgment against Defendants in a sum to be determined by the Court, but in no event an amount less than

the sum of Five Million Dollars ($5,000,000.00), which represents the true and reasonable value of Plaintiff's services.

### AS AND FOR A TWELFTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (Injunction)

194.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "193" above, as if same were more fully set forth at length herein.

195.     Plaintiff has no adequate remedy at law.

196.     Based on the foregoing, a substantial likelihood exists that Plaintiff will suffer and continue to suffer serious irreparable injury through Defendants' acts in the absence of injunctive relief.

197.     A balancing of the equities strongly weighs in favor of Plaintiff such that injunctive relief is appropriate in Plaintiff's favor.

198.     Plaintiff is entitled to a temporary, preliminary and permanent injunction, enjoining Defendants, for a period of time set by the Court as it deems just and proper, but no less than two (2) years from the date of final adjudication of this action, from competing against Plaintiff by offering and/or providing benefits cards or flexible spending plans to New York State Home Health Care agencies, and Wage Parity and Living programs throughout the State of New York.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
### AGAINST THE FLEX FACTS DEFENDANTS
### (Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, 1839)

199.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "198" above, as if same were more fully set forth at length herein.

200.     Plaintiff is the owner of trade secrets, as defined by the DTSA.

201.    Plaintiff's trade secrets consist of financial, business, scientific, technical, economic and/or engineering information, including, patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

202.    Plaintiff's trade secrets include, but are not limited to, its methods of doing business, business models, technology, know-how, price books or lists, and client names.

203.    Plaintiff has taken reasonable measures to keep its trade secrets confidential, including, but not limited to, storing Plaintiff's trade secrets on password protected computers and allowing only certain employees to access those computers.

204.    Plaintiff's trade secrets are comprised of information that derives independent economic value, whether actual or potential, from not being generally known to, and not being readily available through proper means by, another person who can obtain economic value from the disclosure or use of the information.

205.    Plaintiff's trade secrets are related to products and/or services used in, or intended for use in, interstate or foreign commerce.

206.    Upon information and belief, Flex Facts misappropriated Plaintiff's trade secrets by disclosing or using Plaintiff's trade secrets without Plaintiff's express or implied consent.

207.    At the time of Flex Facts' disclosure or use of Plaintiff's trade secrets, Flex Facts knew or had reason to know that their knowledge of Plaintiff's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of Plaintiff's trade secrets or to limit their use.

208.    Flex Facts acquired Plaintiff's trade secrets while bound by, *inter alia*, the terms of the Agreement with Plaintiff not to disclose such trade secrets.

209.    At the time of Flex Facts' disclosure or use of Plaintiff's trade secrets, Flex Facts knew or had reason to know that they owed a duty to Plaintiff to maintain the secrecy of Plaintiff's trade secrets or limit their use.

210.    Flex Facts' misappropriation of Plaintiff's trade secrets was willful and malicious.

211.    The aforementioned acts, as well as other acts yet to be discovered, constitute a violation of the DTSA.

212.    Flex Facts' aforementioned acts, as well as others yet to be discovered, caused injury to Plaintiff.

213.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged, and demands judgment against Flex Facts in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00).

214.    As a result of Flex Facts' misappropriation of Plaintiff's trade secrets, Plaintiff is entitled to damages consisting of reasonable royalties, actual loss, and unjust enrichment pursuant to 18 U.S.C. § 1836(b)(3)(B).

215.    Plaintiff has no adequate remedy at law.

216.    As a result of the foregoing, Plaintiff is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

217.    As a result of the foregoing, pursuant to 18 U.S.C. § 1836(b)(3)(C), due to Flex Facts' willful and malicious misappropriation, Plaintiff is entitled to exemplary damages in an amount up to twice the amount of actual damages awarded under 18 U.S.C. § 1836(b)(3)(B).

218.     As a result of the foregoing, due to Flex Facts' willful and malicious misappropriation, Plaintiff is entitled to reasonable attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

**WHEREFORE**, Plaintiff demands judgment as follows:

On the **First Cause of Action,** Plaintiff has been damaged, and continues to be damaged, and demands judgment against Flex Facts in an amount unknown at this time but believed to be in excess of Five Million Dollars ($5,000,000.00).

On the **Second Cause of Action**, Plaintiff has been damaged, and continues to be damaged, and demands the imposition of a constructive trust over all the property of Flex Facts, including, but not limited to, (a) any and all profits received from any transaction between Flex Facts on the one hand and either ABI, Renaissance or other companies Plaintiff has yet to discover on the other hand; and (b) any and all profits received as a result of the use by Flex Facts of any of Plaintiff's methods of doing business, business models, technology, know-how and price books or lists, and client names, including, but not limited to, any transactions between Flex Facts on the one hand and either ABI, Renaissance, or other companies Plaintiff has yet to discover, on the other hand.

On the **Third Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against Flex Facts in an amount unknown at this time but believed to be in excess of Five Million Dollars ($5,000,000.00) and punitive damages equal to one hundred twenty-five percent (125%) of the profits that Flex Facts makes selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Flex Facts' bad acts to the trial of this action.

On the **Fourth Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against Flex Facts in an amount unknown at this time but believed to be in

excess of Five Million Dollars ($5,000,000.00) and punitive damages equal to one hundred twenty-five percent (125%) of the profits that Flex Facts makes selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Flex Facts' bad acts to the trial of this action.

On the **Fifth Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against Defendants in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00) and punitive damages equal to one hundred twenty-five percent (125%) of the profits that Defendants make selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Defendants' bad acts to the trial of this action.

On the **Sixth Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against Flex Facts in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00) and punitive damages equal to one hundred twenty-five percent (125%) of the profits that Flex Facts makes selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Flex Facts' bad acts to the trial of this action.

On the **Seventh Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against THCC in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00) and punitive damages equal to one hundred twenty-five percent (125%) of the profits that THCC makes selling its products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of THCC's bad acts to the trial of this action.

On the **Eighth Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against Defendants in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00) and punitive damages equal to one hundred twenty-five percent (125%) of the profits that Defendants make selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Defendants' bad acts to the trial of this action.

On the **Ninth Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against Defendants in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00) and punitive damages equal to one hundred twenty-five percent (125%) of the profits that Defendants make selling their products and services to any potential customer that Plaintiff either did, or could have done, business with from the date of Defendants' bad acts to the trial of this action.

On the **Tenth Cause of Action**, Plaintiff has been damaged, continues to be damaged, and demands judgment against Defendants in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00) and injunctive relief, treble damages, attorney's fees and full costs.

On the **Eleventh Cause of Action**, Plaintiff has been damaged, continues to be damaged and demands judgment against Defendants in an amount to be determined at trial but believed to be. in no event, an amount less than Five Million Dollars ($5,000,000.00).

On the **Twelfth Cause of Action**, Plaintiff has been damaged, continues to be damaged and demands judgment against Defendants for a temporary, preliminary and permanent injunction, enjoining Defendants, for a period of time set by the Court as it deems just and proper but no less than two (2) years from the date of final adjudication of this action, from competing against

Plaintiff by offering and/or providing benefits cards or flexible spending plans to New York State Home Health Care agencies and Wage Parity and Living programs throughout the state of New York.

**On the Thirteenth Cause of Action,** Plaintiff has been damaged, continues to be damaged, and demands judgment against Flex Facts consisting of 1) reasonable royalties, actual loss and unjust enrichment, in an amount unknown at this time, but believed to be in excess of Five Million Dollars ($5,000,000.00); 2) exemplary damages in an amount up to twice the amount of actual damages awarded; 3) an order enjoining Flex Facts from misappropriating Plaintiff's trade secrets; and 4) reasonable attorney's fees.

Together with interest, attorney's fees, and the costs and disbursements of this action, and such other further or different relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial of all issues so triable.

Dated: Mineola, New York
      June 10,  2016              Respectfully submitted,

                                   **LEVITT LLP**

                            __ s/ Catherine B. Silliman_____
                            Catherine B. Silliman
                            Steven L. Levitt
                            Attorneys for Plaintiff
                            129 Front Street
                            Mineola, NY 11501
                            (516) 248-9700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of June 2016, a true and correct copy of the

foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which

will then send a notification of such filing (NEF) to the following counsel of record:

> Evan M. Newman, Esq.
> Aviva Francis, Esq.
> Newman Law, P.C.
> 377 Pearsall Avenue, Suite C
> Cedarhurst, NY 11516
> Tel: (516) 545-0343
> Fax: (212) 671-1883
> Email: enewman@newmanlawpc.com
>        afrancis@newmanlawpc.com

*Counsel for Defendants*

> s/ Catherine B. Silliman
> Catherine B. Silliman
> LEVITT LLP
> 129 Front Street
> Mineola, NY 11501
> Tel: (516) 248-9700
> Fax: (516) 741-9224
> Email: csilliman@levittlawllp.com

*Counsel for Plaintiff*